UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:19-CR-54 JD |
| ERASMO MARTINEZ et al. | |

## OPINION AND ORDER

The government has submitted a *Santiago* proffer in which it seeks preliminary admission of statements against Defendant Erasmo Martinez. The proffer describes the evidence that the government will present at trial to prove that a conspiracy to distribute illicit drugs (such as fentanyl and heroin) existed, that Erasmo Martinez, Nestor Ochoa, and George Arroyo were members of the conspiracy, and that various statements were made by defendants or non-defendant co-conspirators in furtherance of the conspiracy. After considering the government's submission, the Court finds that, if the government produces the proffered evidence at trial, it will have satisfied the requirements under Federal Rule of Evidence 801(d)(2)(E) to admit the statements as non-hearsay evidence.

An out of court statement offered for the truth of the matter asserted is generally inadmissible hearsay. Fed. R. Evid. 801(c); 802. But under Rule 801(d)(2)(E), a statement that would otherwise be hearsay is not considered hearsay where "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." To admit statements against a defendant under this rule, the government must demonstrate by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and declarant were both members of the conspiracy; and (3) the statements to be admitted were made in the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S.

171, 175 (1987); *United States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010). The Seventh Circuit has endorsed a process for admitting statements under this rule by which a district court may conditionally admit the statements based on a pretrial proffer by the government, subject to reevaluation at trial based on the evidence actually presented. *United States v. McClellan*, 165 F.3d 535, 553–54 (7th Cir. 1999); *United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir. 1978). In making its determination, the Court must decide "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *Santiago*, 582 F.2d at 1143. The Court may consider the proffered statements themselves as evidence of both the existence of a conspiracy and the defendant's participation in the conspiracy, but the contents of the statements must also be corroborated by at least some supporting evidence. *United States v. Harris*, 585 F.3d 394, 398–99 (7th Cir. 2009). Such evidence may be either direct or circumstantial. *See United States v. Johnson*, 592 F.3d 749, 754–55 (7th Cir. 2010).

Here, the government seeks a conditional ruling admitting statements made by Nestor Ochoa and George Arroyo surrounding six events which occurred in January of 2019 and March of 2019. (DE 147 at 3–4.) Three of these events allegedly involved Ochoa distributing heroin to a confidential source ("CS") in deals facilitated by Martinez. Two of the events allegedly involved Arroyo distributing fentanyl to an undercover officer in deals facilitated by Martinez. And one of these events allegedly involved the attempted delivery of four kilos of fentanyl by Arroyo and Ochoa to an undercover officer. The Court conducts its preliminary analysis of the admissibility of the statements surrounding these events in two parts. First, it considers whether the government has presented sufficient evidence for the Court to conclude that Martinez, Ochoa, and Arroyo were engaged in a conspiracy. If they were, the Court then considers whether the

statements the government seeks to admit were made during and in furtherance of the conspiracy.

The Government indicates in its proffer that it intends to prove that a conspiracy existed by presenting recordings, texts, as well as testimonial evidence. (*Id.* at 23.) "An unlawful conspiracy exists when two or more people agree to commit an unlawful act, and the defendant 'knowingly and intentionally' joins in the agreement." *United States v. Bey*, 725 F.3d 643, 648 (7th Cir. 2013) (citing *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010)). Based on the government's proffer, the Court finds that it has met its burden to demonstrate that an agreement to pursue the alleged scheme existed between Martinez, Ochoa, and Arroyo.

First, the government anticipates presenting evidence showing that Martinez communicated with a CS on multiple occasions to help facilitate drug transactions where the CS would buy heroin from Ochoa. At trial, the government expects to present recordings of the CS speaking with Martinez on January 10, 2019, and January 11, 2019, in order to arrange a meeting with Ochoa. (DE 147 at 12.) The government also represents that it has a recording of this meeting in which Ochoa and the CS discuss potential future drug deals. (*Id.* at 13.) Later texts between Martinez and the CS purportedly reference the CS's prior meeting with Ochoa. (*Id.*) This evidence alone, which appears to show Martinez arranging a drug deal with Ochoa, is sufficient to meet the government's burden to establish, by a preponderance of the evidence, that there was a conspiracy to distribute drugs between Martinez and Ochoa. However, the government also anticipates presenting similar evidence surrounding later drugs deals, showing the CS communicating with both Martinez and Ochoa through calls and texts to arrange two other drug deals on January 22, 2019, and January 24, 2019. (*Id.* at 14–17.) This evidence further demonstrates that Martinez and Ochoa were members of the conspiracy.

The government also expects to present evidence showing that Arroyo was involved in the conspiracy. The government anticipates introducing a recording that will show that Martinez contacted the CS on March 22, 2019, to discuss another drug deal. (*Id.* at 17.) It appears that Martinez then sent texts to the CS arranging for the CS to sample drugs on March 23, 2019. (*Id.* at 18.) The government specifically notes that Martinez texted CS that the drugs were a "different color," and that, in a separate recording between Arroyo and the undercover officer at the meeting on Marth 23, 2019, Arroyo discusses how the color of the drug sample was purple. (*Id.* 18–19.) The government also plans to present similar evidence surrounding the drug deal on March 25, 2019, including a recording of the deal between the undercover officer and Arroyo, as well as texts sent from Martinez to the CS stating the car in which Arroyo would be arriving. (*Id.* at 20.) In addition to the evidence of recordings and texts, the government anticipates that Arroyo "will identify [Martinez] as a co-conspirator" and "will be able to positively identify [Martinez's] voice." (*Id.* at 22.)

After considering all this evidence, the Court concludes that the government has provided the Court a sufficient basis to conclude that Martinez, Ochoa, and Arroyo were each more likely than not working together with the joint purpose of distributing illicit drugs, which is the essence of a conspiracy. *See United States v. Speed*, 656 F.3d 714, 717 (7th Cir. 2011) (explaining that to establish a conspiracy, the government must demonstrate an understanding, either explicit or implicit, among co-conspirators to work together to achieve an illegal goal). Accordingly, the Court finds preliminarily that the proffered evidence will be sufficient to permit a finding by a preponderance of the evidence that a conspiracy existed between Martinez, Ochoa, and Arroyo.

Having ascertained the existence of a conspiracy between those three individuals, the Court now moves to consider whether the statements the government intends to introduce

through Rule 801(d)(2)(E) were made during and in furtherance of the conspiracy. The standard to be applied "is whether some reasonable basis exists for concluding that the statement furthered the conspiracy." *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987). A statement is "in furtherance of" a conspiracy when it promotes the conspiracy's objectives. *United States v. Gajo*, 290 F.3d 922, 929 (7th Cir. 2002). Under this standard, a statement is admissible as in furtherance of the conspiracy even if it is susceptible to alternate interpretations, and "need not have been exclusively, or even primarily, made to further the conspiracy." *Shoffner*, 826 F.2d at 628.

The government's proffer does not list every statement from Ochoa and Arroyo it intends to admit. Instead, the government provides four general categories of statements it seeks to admit:

(1) Statements and Texts made by Nestor Ochoa to the Confidential Source on behalf of the Conspiracy prior to, during, and after the January 11, 22, and 24 drug transactions.
(2) Statements and Texts made by George Arroyo to the Confidential Source and the Undercover Officer on behalf of the Conspiracy prior to[,] during, and after the March 23-25 drug transactions.
(3) Statements and Texts made by George Arroyo to unidentified co-conspirators on behalf of the conspiracy prior to, and during, the March 23-25th drug transactions.
(4) Statements and Texts made between George Arroyo and the Defendant prior to [and] during the March 23 drug transactions . . . .

(DE 147 at 24.) The Court will analyze each of those categories in turn.

First the Court considers the statements and texts made by Ochoa surrounding the three drug transactions in January of 2019. Concerning the first transaction on January 11, 2019, the government plans to present a recording where Ochoa calls the CS to discuss meeting the CS at a Panda Express. (DE 147 at 13.) The government also appears to have a recording of this meeting, in which Ochoa and the CS discuss potential future deals for heroin. (*Id.*) Similar texts

5

and statements were made by Ochoa surrounding the transactions on January 22nd and 24th. (*Id.* at 14–17.) On those dates, the government intends to admit into evidence texts and calls from Ochoa preceding both drug deals and helping to set them up, as well as recordings of the drug deals between Ochoa and the CS. (*Id.*) The texts and statements of Ochoa clearly were made in furtherance of the conspiracy since they helped arrange and facilitate the drug deals. *See United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991) (explaining that statements made "to conduct and further the business of a drug conspiracy," such as solicitation of business or offering future services, are statements made in furtherance of a drug conspiracy). Accordingly, the Court conditionally admits the statements and texts of Ochoa to the CS on behalf of the conspiracy prior to, during, and after the January 11th, 22nd, and 24th drug transactions.

The statements and texts made by Arroyo surrounding the two drug transactions in March of 2019 also qualify as statements made during and in furtherance of a conspiracy to distribute illicit drugs. As it relates to the March 23, 2019, drug deal, the government plans to introduce a recorded meeting between Arroyo and the undercover officer where Arroyo gave an undercover officer a drug sample and discussed how the drug sample was purple. (DE 147 at 18.) The government also represents that it has evidence indicating the Arroyo arranged with the undercover officer to get another sample on March 25, 2019. (*Id.* at 20.) In this meeting, the government expects that a recording will show Arroyo and the undercover officer discussing a future deal for four kilograms of heroin. (*Id.*) Similar to the statements made by Ochoa, the statements by Arroyo described above also helped arrange and facilitate the drug deals. Accordingly, the Court conditionally admits the statements and texts made by George Arroyo to the CS and the undercover officer on behalf of the conspiracy prior to, during, and after the March 23–25 drug transactions.

The government also seeks to admit statements and texts made by George Arroyo to unidentified co-conspirators surrounding the drug transactions on March 23, 2019, and March 25, 2019. This evidence concerns "[a] couple of communications [between Arroyo] with a third party, which the Government anticipates . . . . will suggest were the people who delivered the fentanyl to Arroyo." (DE 147 at 32.) The government has explained that these communications will be limited to "texts . . . meant to help make the transactions go smoothly and deliver the fentanyl to the intended buyer." (DE 25.) As these statements were made by Arroyo to help facilitate the drug deal by getting the fentanyl delivered, the Court will conditionally admit the statements by Arroyo to the third party. *See Cox*, 923 F.2d at 527.

The Court also briefly notes that many of the statements and texts by the CS, undercover officer, and the other unidentified co-conspirators would likely all be admissible for a non-hearsay purpose. The Seventh Circuit has consistently held that "statements providing context for other admissible statements are not hearsay because they are not offered for their truth." *United States v. Foster*, 701 F.3d 1142, 1150 (7th Cir. 2012) (quoting *United States v. Van Sach*, 458 F.3d 694, 701 (7th Cir. 2006). Instead of being offered for their truth, these type of statements help to make the declarant's statement intelligible. *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006) (holding that a statement putting the declarant's statement "into context" and making it "intelligible" was not hearsay). Therefore, so long as the statements by the CS, undercover officer, and other unidentified co-conspirators are meant to contextualize the declarant's statement, they will likely be admissible non-hearsay.

Lastly, the Court considers the statements and texts made between George Arroyo and Martinez prior to and during the March 23 drug transactions. According to the government, these texts all "reference[] the delivery of the fentanyl samples and the attempted delivery of the four

kilograms of fentanyl." (DE 147 at 23.) Therefore, these texts appear to have informed Martinez of the status of the conspiracy. The Seventh Circuit has held that statements which are "generally part of the ordinary 'information flow" by and among conspirators or served to inform member about the current status of the conspiracy" are statements made in furtherance of the conspiracy. *United States v. Rea*, 621 F.3d 595, 605 (7th Cir. 2010). Since these texts appear to have discussed the delivery of the fentanyl and the failed delivery of the four kilograms of fentanyl, the Court conditionally admits them. Furthermore, any texts written by Martinez constitute opposing party statements admissible under Federal Rule of Evidence 801(d)(2)(A).

In its response brief to the *Santiago* proffer, Martinez argues that the government's proffer should be denied because it is vague and conclusory. (DE 152.) In support of this, Martinez cites to a case from our sister Court in the Northern District of Illinois: *United States v. Bainbridge Mgmt., L.P.*, No. 01 CR 469-1, 2002 WL 31006135, at *3 (N.D. Ill. Sept. 5, 2002). However, *Bainbridge* is inapposite to the instant case. In that case, the *Santiago* proffer failed to "sufficiently identify [the] coconspirators" and "fail[ed] to specify the co-conspirator statements to be offered at trial and the manner in which the statements further the conspiracy." *Id.* Here, however, the government's proffer identifies Ochoa and Arroyo as co-conspirators and summarizes how their statements and texts furthered the conspiracy. The Seventh Circuit has emphasized that these types of summaries are permissible. *See United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009) (finding that the acceptance of written proffer that contained a "preview of the evidence as to all defendants," including summaries of calls and testimony, was sufficient). As described above, the government sufficiently explains how the texts and statements furthered the conspiracy by helping to organize and facilitate the drug transactions.

Accordingly, the Court finds that the government has shown by a preponderance of the evidence that the conspiracy described by the government existed between Martinez, Ochoa, and Arroyo. It has also shown that the conversations and statements the Court conditionally admitted above were made during the conspiracy and in furtherance of it. Following the procedures suggested in *Santiago*, 582 F.2d 1128, the statements are conditionally admitted pursuant to Rule 801(d)(2)(E) subject to a final ruling before the close of the government's case once the Court has seen the evidence. The government is encouraged to lay foundation for admission of the statements before seeking to admit the statements themselves against Martinez.

SO ORDERED.

ENTERED: April 22, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court